CASEY v AUTO-OWNERS INSURANCE COMPANY

Docket No. 266576. Submitted September 12, 2006, at Detroit. Decided
    September 21, 2006. Approved for publication December 21, 2006,
    at 9:15 a.m. Leave to appeal sought.

Everett and Maryalice Casey brought an action in the Oakland
    Circuit Court against Auto-Owners Insurance Company and its
    subsidiary, Home-Owners Insurance Company; ASU Group; and
    Meredith Reschly after the plaintiffs' insurance policy did not
    cover the full amount of actual losses incurred from a fire at the
    plaintiffs' home. The plaintiffs sought reformation of the insur-
    ance contract, prejudgment interest, and punitive damages, alleg-
    ing that Auto-Owners did not advise them that their policy limits
    had been lowered, that Auto-Owners breached its duty to establish
    limits that would cover their actual losses, and that the adjuster
    hired by Auto-Owners to assess the property damage, Meredith
    Reschly of ASU Group, tortiously induced the plaintiffs to refrain
    from hiring a public adjuster. The trial court, Edward Sosnick, J.,
    granted the defendants' motions for summary disposition and
    denied the plaintiffs' motions to amend their complaint. The
    plaintiffs appealed.

The Court of Appeals *held*:

1. The plaintiffs are not entitled to relief for breach of contract
because Everett Casey failed to read his policy and abrogated his
duty to inquire about the reduction in coverage, thereby implicitly
accepting the lower coverage limits. Everett Casey admitted at his
deposition that his insurance agent gave him notice of the reduc-
tion in coverage and that he had the opportunity to become aware
of the policy's terms, and his later-filed affidavit containing
contrary information cannot be used to defeat a motion for
summary disposition.

2. The trial court did not err in enforcing the plain language of
the insurance policy, which did not impose a duty on Auto-Owners
to accurately appraise the property and did not include any
guarantee that the coverage provided would be adequate to cover
any loss that might occur. The terms of the policy established
maximum payment limits for the various categories of loss, and

Auto-Owners tendered to the plaintiffs the full amount of the stated coverage limits. Therefore, Auto-Owners did not breach the contract.

3. The trial court did not err in refusing to reform the contract, because the plaintiffs did not establish a mutual mistake of fact or fraud on the part of Auto-Owners.

4. The trial court properly dismissed the plaintiffs' claim of equitable estoppel because equitable estoppel is a defense, not a cause of action.

5. Auto-Owners had no statutory duty to ensure that the plaintiffs' property was insured for at least 80 percent of its value. The applicable statutory provisions allow insurers to set limits on their liability when issuing replacement-cost policies, and there is no prohibition against agreeing to a policy limit that is below this percentage.

6. The trial court properly denied the plaintiffs' request for punitive damages, which are not available in Michigan absent express statutory authorization.

7. The trial court did not abuse its discretion in denying the plaintiffs' motions to amend their complaint or file supplemental pleadings. The theories that the plaintiffs wished to add had no factual or legal basis or had already been considered and dismissed by the trial court.

8. The trial court properly denied the plaintiffs' request for prejudgment interest because the trial court's order was not a money judgment, but was an order declaring that the plaintiffs were entitled to the policy amounts that Auto-Owners had already offered.

9. The trial court did not abuse its discretion in refusing to impose sanctions.

Affirmed.

1. EVIDENCE — DEPOSITION TESTIMONY — CONTRADICTION.

A witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition.

2. INSURANCE — POLICY CHANGES — NOTICE.

An insured person, when notified that his or her insurance coverage is being reduced, is bound to inquire into the amount of the reduction.

*Everett R. Casey* and *Joseph A. Camardo, Jr.*, for Everett and Maryalice Casey.

*Secrest Wardle* (by *Michael L. Updike*) for Auto-Owners Insurance Company and Home-Owners Insurance Company.

*Kopka, Pinkus, Dolin & Eads, PLC* (by *Mark L. Dolin* and *Angela K. Harmon-Kuhl*), for ASU Group and Meredith Reschly.

Before: WHITBECK, C.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

### I. OVERVIEW

Plaintiffs, Everett and Maryalice Casey, appeal as of right the trial court orders denying the Caseys' motions for summary disposition under MCR 2.116(C)(10) and granting defendants, Auto-Owners Insurance Company and its subsidiary Home-Owners Insurance Company (collectively referred to as Auto-Owners), ASU Group, and Meredith Reschly, summary disposition under MCR 2.116(C)(8) and (10). This case arose when a fire damaged the Caseys' home and they filed a claim for insurance benefits. We affirm.

### II. BASIC FACTS AND PROCEDURAL HISTORY

On November 10, 2001, a fire damaged the Caseys' Orchard Lake home. At the time of the fire, Auto-Owners insured the property for fire loss. The policy, which was allegedly effective on the date of the fire, provided the following coverage limits: $805,500 for the dwelling, $80,550 for other structures, $563,850 for personal property, and $161,100 for additional living expenses. The Caseys' principal allegation is that they were not advised of the $805,500 dwelling coverage

limit, which was significantly lower than the previous years' dwelling coverage limits.

The Caseys filed suit in propria persona, disputing the amount of coverage available to them under the policy and seeking reformation of the policy limits to an amount that would cover their claimed actual losses, alleging breach of contract and equitable estoppel, and requesting punitive damages. The Caseys alleged that Auto-Owners erroneously recalculated the replacement cost of the home, and then unilaterally and tortiously reduced the replacement-cost coverage. The Caseys asserted that the adjusted policy limits were erroneously low and that Auto-Owners had a duty to establish limits that would actually cover their losses. The Caseys further alleged that ASU Group and its adjuster, Meredith Reschly, whom Auto-Owners appointed to assess the Caseys' property damage, tortiously induced them not to employ a public adjuster and to instead rely on Reschly's determinations. In January 2003, New York attorney Joseph A. Camardo, Jr., was admitted as pro hac vice counsel on the Caseys' behalf.

Numerous competing motions for summary disposition followed. The trial court concluded that equitable estoppel was not a proper cause of action, that Michigan does not recognize a tort claim for bad-faith breach of contract, and that Michigan does not allow punitive damages. The trial court further concluded that exemplary damages were not proper because the Caseys failed to allege torts independent of the claimed breach. The trial court declined to recognize the Caseys' allegations of bad-faith denial of insurance claims and breach of implied duty of good faith and fair dealing as valid claims. With respect to the Caseys' breach of contract and reformation claims, the trial court noted that the Caseys admitted that Reschly had no part in the policy

limits' being reduced. The trial court also noted that Everett Casey admitted that he was informed of the policy change at the time it took effect. The trial court then explained that the Caseys did not seek other insurance but accepted the reduced limit by making premium payments after receiving notice of the change. The trial court also concluded that the Caseys misinterpreted MCL 500.2117 because, contrary to their assertions, subsection 2(i) of that statute did not require minimum 80-percent replacement-cost insurance. The trial court concluded, "Given that the defendant has tendered the policy limits, . . . [there is] no basis for a claim for breach of contract" or reformation of the contract. The trial court ordered that Auto-Owners retender any policy limits that the Caseys had rejected. Ultimately, the trial court granted defendants' motions for summary disposition and denied the Caseys' motions for summary disposition.

The Caseys also moved several times to amend their complaint. The trial court initially denied the motion; however, on reconsideration, the trial court ruled that the Caseys could "amend the complaint to allege further facts relating to the events leading up to the defendants' rejection of [their] insurance claims," but could "not amend to add new counts, claims, or causes of action." Despite the trial court's ruling, the Caseys attempted once more to amend their complaint, but the trial court denied their motion, stating that the 23-count proposed amendment was late and simply restated claims that were previously dismissed.

The Caseys asserted that they were entitled to a mandatory award of statutory interest under MCL 600.6013. The Caseys contended that the previous tenders were conditional advances that became binding on the trial court's order directing Auto-Owners to

retender the policy limits. The trial court concluded that no interest was due on the amounts paid before litigation commenced or the amounts that Auto-Owners paid and the Caseys retained during the litigation, explaining that "[t]hose amounts are subject only to the declaratory relief that the [Caseys] are entitled to retain those amounts." However, the trial court concluded that interest was due on the amounts tendered conditionally that the Caseys rejected. Because the trial court could not determine whether the payments for the Caseys' personal property losses were tendered unconditionally or conditionally as a full settlement for all their claims, it requested further evidence on the issue. Ultimately, the trial court concluded that the amounts were tendered as unconditional advances and not as an accord and satisfaction. Accordingly, the trial court held that Auto-Owners was not liable for prejudgment interest on those amounts either. The Caseys now appeal.

### III. SUMMARY DISPOSITION

#### A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition.[1] We also review de novo the proper interpretation and application of an insurance policy.[2] Under MCR 2.116(C)(8), a party may move for summary disposition on the ground that the opposing party has failed to state a claim on which relief can be granted. Under this motion, the legal basis of the complaint is tested by the pleadings alone.[3] All factual

---

[1] *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 196; 702 NW2d 106 (2005).

[2] *Id.*

[3] *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).

allegations are taken as true and construed in the light most favorable to the nonmoving party.[4] The motion should be denied unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover.[5] Under MCR 2.116(C)(10), a party may move for dismissal of a claim on the ground that there is no genuine issue with respect to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party must specifically identify the undisputed factual issues and support its position with documentary evidence.[6] The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party.[7]

Whether contract language is ambiguous is also a question of law that we review de novo.[8] We review equity cases de novo, but we will not reverse or modify the judgment unless convinced that we would have reached a different result had we occupied the position of the trial court.[9]

### B. BREACH OF CONTRACT

#### (1) NOTICE

It is well established that an insured is obligated to read his or her insurance policy and raise any questions about the coverage within a reasonable time after the

---

[4] *Id.* at 119.

[5] *Id.*

[6] MCR 2.116(G)(3)(b) and (4); *Maiden, supra* at 120-121.

[7] MCR 2.116(G)(5); *Maiden, supra* at 120.

[8] *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

[9] *Capitol S&L Ass'n v Przybylowicz*, 83 Mich App 404, 407; 268 NW2d 662 (1978).

policy is issued.[10] Consistent with this obligation, if the insured has not read the policy, he or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy.[11] However, there is an exception to this rule when the insurer renews the policy but fails to notify the insured of a reduction in coverage.[12] When the insurer fails to provide notice, the insurer is bound to the greater coverage in the earlier policy, and the insurer is estopped from denying coverage on the basis of the discrepancy between the current policy and the prior one that was not brought to the insured's attention.[13]

The primary issue here is whether the Caseys received notice of the change in their insurance policy's dwelling coverage limit. The Caseys concede that their insurance agent, James Thurmon, informed them before the fire that their coverage was being reduced. But they argue that they had no notice of the actual amount of their reduced coverage until after the fire. Accordingly, they argue that they should not be bound by that reduced coverage limit and that they should instead receive 100 percent of the full cost to replace their dwelling. Auto-Owners argues that the Caseys are charged with knowledge of their policy's terms and that it fulfilled its duty to notify the Caseys of the reduced coverage when it notified James Thurmon.

---

[10] *VanDyke v League Gen Ins Co*, 184 Mich App 271, 275; 457 NW2d 141 (1990).

[11] *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 567; 596 NW2d 915 (1999); *Auto-Owners Ins Co v Zimmerman*, 162 Mich App 459, 461; 412 NW2d 925 (1987).

[12] *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 145; 314 NW2d 453 (1981); *Industro Motive Corp v Morris Agency, Inc*, 76 Mich App 390, 395-396; 256 NW2d 607 (1977).

[13] *Parmet Homes, supra* at 145; *Industro Motive Corp, supra* at 395-396.

At his deposition, Everett Casey admitted that a year before the fire he received notice from James Thurmon that Auto-Owners had chosen to reduce the Caseys' dwelling coverage. Everett Casey also explained that, although he did not recall receiving one, it was possible that he received a copy of his insurance policy when the Caseys purchased the policy in 1995. He also admitted that he "had the opportunity to become aware" of the policy's terms. Later, Everett Casey submitted an affidavit with statements contrary to his deposition testimony. However, a witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition.[14] Thus, regardless of the assertions made in his affidavit, we accept as binding Everett Casey's deposition testimony. In that testimony, in sum, he stated that he had the opportunity, yet failed, to become familiar with his insurance policy and that James Thurmon notified him a year before the fire that there was going to be a reduction in his coverage.

An insured person, when notified that his or her insurance coverage is being reduced, is bound to inquire into the amount of the reduction.[15] But, as Everett Casey admitted, "no dollar amounts were mentioned" in his conversation with Thurmon. Thus, we conclude that the Caseys are not entitled to relief for breach of contract when Everett Casey admittedly failed to read the policy and knowingly abrogated his duty to inquire about the change in his coverage, thereby implicitly accepting the new coverage limits. "It was his business to know what his contract of insurance was . . . ."[16]

---

[14] *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 256-257; 503 NW2d 728 (1993).

[15] See *VanDyke, supra* at 275.

[16] *Cleaver v Traders' Ins Co*, 65 Mich 527, 532; 32 NW 660 (1887).

### (2) AUTO-OWNERS' OBLIGATIONS

Everett Casey asserts that it was Auto-Owners' obligation to determine the correct amount of insurance for the home. However, the policy did not impose any duty on Auto-Owners to accurately appraise the property, nor did it include any guarantee that the coverage provided would be adequate to cover any loss that might occur. Although Everett Casey may have reasonably expected that such a duty or guarantee would be imposed by the policy, that expectation cannot overcome the actual terms of the policy. A party cannot be bound to an obligation that, although reasonably expected, is not actually covered by the terms of the agreement.[17] Further, contrary to Everett Casey's belief that he had no basis or responsibility to challenge the reduced coverage, as the trial court pointed out, the Caseys could have rejected the policy change and sought different insurance, or, as outlined in the policy, sought an independent appraisal. The trial court did not err in enforcing the plain language of the insurance contract.

### (3) PLAIN LANGUAGE OF THE CONTRACT

The Caseys nevertheless argue that Auto-Owners' limitation on the amount of their recovery was in contravention of the plain language of the insurance contract. The Caseys argue that Auto-Owners was obligated to pay 100 percent of the cost to replace their dwelling. We disagree.

The terms of the insurance policy indicate that the policy is a replacement-cost policy with maximum payment limits for the various categories of loss. Under the policy terms, regardless of whether the limit of insurance applying to the damaged covered property was 80

---

[17] *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63; 664 NW2d 776 (2003).

percent or more, or less than 80 percent, of the full replacement cost of that covered property, in no event was Auto-Owners obligated to pay more than the limit of insurance applying to the damaged covered property. Auto-Owners agreed to pay a specified maximum amount of money in the event of the Caseys' loss. Auto-Owners has tendered to the Caseys the full amount of the stated coverage limits. Therefore, Auto-Owners did not breach the contract.

The Caseys and Auto-Owners were the only parties to the subject contract; thus, the Caseys' claims of breach of contract are inapplicable to ASU Group and Reschly.

### C. REFORMATION

"A court of equity has power to reform the contract to make it conform to the agreement actually made."[18] To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence.[19] A unilateral mistake is not sufficient to warrant reformation.[20] A mistake in law—a mistake by one side or the other regarding the legal effect of an agreement—is not a basis for reformation.[21]

The Caseys have failed to show by clear and convincing evidence that a mutual mistake has been made. Rather, the Caseys were simply unilaterally mistaken

---

[18] *Raymond v Auto-Owners' Ins Co*, 236 Mich 393, 396; 210 NW 247 (1926).

[19] *Goldman v Century Ins Co*, 354 Mich 528, 533; 93 NW2d 240 (1958); *Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995); *Progressive Mut Ins Co v Taylor*, 35 Mich App 633, 637; 193 NW2d 54 (1971).

[20] *Progressive Mut Ins Co, supra* at 637.

[21] *Schmalzriedt v Titsworth*, 305 Mich 109, 119-120; 9 NW2d 24 (1943); *Olsen, supra* at 29.

about the terms of their policy—a mistake that could have been remedied had they inquired about those terms. Thus, we hold that there is no reason to reform the contract.

The Caseys and Auto-Owners were the only parties to the subject contract; thus, the Caseys' claims for reformation are inapplicable to ASU Group and Reschly.

### D. EQUITABLE ESTOPPEL

"Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of the facts."[22] It is well established under Michigan law that equitable estoppel is not a cause of action unto itself; it is available only as a defense.[23] The Caseys' attempt to assert equitable estoppel as a cause of action misuses the doctrine.[24] Accordingly, we conclude that the trial court properly dismissed the Caseys' equitable estoppel claim.

### E. STATUTORY VIOLATION

Although the parties may omit them, mandatory statutory provisions of the Insurance Code must be read into insurance contracts.[25] Accordingly, citing MCL 500.2117 and MCL 500.2119, the Caseys argue that

---

[22] *Conel Dev, Inc v River Rouge Savings Bank*, 84 Mich App 415, 422-423; 269 NW2d 621 (1978).

[23] *Van v Zahorik*, 227 Mich App 90, 102; 575 NW2d 566 (1997); *Hoye v Westfield Ins Co*, 194 Mich App 696, 704-707; 487 NW2d 838 (1992).

[24] *Van, supra* at 102.

[25] *Stine v Continental Cas Co*, 419 Mich 89, 101-102; 349 NW2d 127 (1984); *Dasen v Frankenmuth Mut Ins Co*, 39 Mich App 582, 584; 197 NW2d 835 (1972).

Auto-Owners had a duty to ensure that their property was insured for at least 80 percent of its value. However, Auto-Owners maintains that, under MCL 500.2104(3) and MCL 500.2826, it was allowed to set limits on its liability in replacement-cost policies. Moreover, Auto-Owners points out that, under MCL 500.2119(7), it is not prohibited "from insuring persons who are not eligible persons."

We agree with the trial court that nothing in MCL 500.2117 prohibits insurers and insureds from agreeing to a policy limit that may be less than 80 percent of the replacement cost. Accordingly, we conclude that the trial court properly granted Auto-Owners' first and second motions for summary disposition and correctly denied the Caseys' four motions for summary disposition.

### F. PUNITIVE DAMAGES

Punitive damages, which are designed to punish a party for misconduct, are generally not recoverable in Michigan.[26] The exception is if they are expressly authorized by statute.[27] The Caseys have not cited any statute that would grant them punitive damages. Accordingly, we conclude that the trial court properly granted Auto-Owners summary disposition on count four of the Caseys' complaint seeking punitive damages.

### IV. MOTION TO AMEND

### A. STANDARD OF REVIEW

"This Court will not reverse a trial court's decision on a motion to amend a complaint absent an abuse of

---

[26] *Hicks v Ottewell*, 174 Mich App 750, 756; 436 NW2d 453 (1989).

[27] *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 765; 685 NW2d 391 (2004).

discretion that results in injustice."[28] Similarly, a trial court's decision to allow a supplemental pleading is discretionary.

### B. FUTILITY

MCR 2.118(A)(2) states: "[A] party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." The Michigan Supreme Court has established that motions to amend "should be granted, and denied only for particularized reasons," which include " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' "[29]

We conclude that amendment was futile because the Caseys merely sought to add a variety of theories that had no factual or legal basis, and that had essentially already been dismissed by the trial court. A plaintiff cannot maintain an action in tort for nonperformance of a contract.[30] There must be a separate and distinct duty imposed by law.[31] An alleged bad-faith breach of an insurance contract does not state an independent tort

---

[28] *Phillips v Deihm*, 213 Mich App 389, 393; 541 NW2d 566 (1995).

[29] *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973), quoting *Foman v Davis*, 371 US 178, 182; 83 S Ct 227; 9 L Ed 2d 222 (1962).

[30] *Ferrett v Gen Motors Corp*, 438 Mich 235, 242; 475 NW2d 243 (1991); *Hart v Ludwig*, 347 Mich 559; 79 NW2d 895 (1956).

[31] *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004); *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 603-604; 374 NW2d 905 (1985).

claim.[32] Here, all the Caseys' proposed claims stem from an alleged bad-faith breach of contract; therefore, those counts are futile as they fail to state an action independent from their breach of contract claim. Further, in breach of contract cases, the general rule is that exemplary damages are not recoverable absent allegation and proof of tortious conduct that is independent of the breach."[33] This is because "the plaintiff is adequately compensated" for a breach of contract "when damages are awarded by reference only to the terms of the contract."[34] The Caseys' complaint does not state a tort claim independent from their breach of contract claim. Thus, they are not entitled to exemplary damages.

To the extent that the Caseys are attempting to impose a duty of good faith and fair dealing on the defendants or their attorneys, their claim is without merit. The Michigan Supreme Court has declared that "the public policy of maintaining a vigorous adversary system outweighs the asserted advantages of finding a duty of due care to an attorney's legal opponent."[35]

> Recognition of an attorney's duty to an adverse party would . . . impose additional burdens on the attorney. The conflict of interest which would result cannot be resolved . . . simply by allowing the attorney to resolve all doubts in favor of the client, for the existence or reasonableness of the doubts might themselves become jury questions which would defy principled resolution.[36]

> In short, creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's

---

[32] *Roberts, supra* at 604; *Kewin v Massachusetts Mut Life Ins Co,* 409 Mich 401, 423; 295 NW2d 50 (1980).

[33] See *Kewin, supra* at 419, 421.

[34] *Id.* at 420.

[35] *Friedman v Dozorc,* 412 Mich 1, 25; 312 NW2d 585 (1981).

[36] *Id.* at 26.

effectiveness as counsel for his client. Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship.[37]

Accordingly, we conclude that the trial court properly denied the Caseys leave to amend their complaint.

### V. INTEREST

The Caseys seek prejudgment interest under MCL 600.6013, which states: "Interest is allowed on a money judgment recovered in a civil action, as provided in this section." Auto-Owners argues that the Caseys' acceptance before judgment of a contested amount precludes their right to seek interest, citing this Court's opinion in *Darnell v Auto-Owners*.[38] However, in *Darnell*, this Court stated, "A settlement before judgment 'waive[s] the right to statutory interest on [the] amount [recovered] because no final judgment was rendered against the [defendant].' "[39] Here, there was no settlement or dismissal based on settlement.

The trial court's reliance on whether the monies were advanced conditionally or unconditionally is irrelevant given that the statute makes no such distinction. The key issue is whether the Caseys recovered a money judgment. The Caseys assert that the trial court's order confirming their entitlement to the coverage limits and directing Auto-Owners to retender any previously rejected tenders was a final judgment in their favor.

---

[37] *Id.* at 24-25.

[38] *Darnell v Auto-Owners Ins Co,* 142 Mich App 1; 369 NW2d 243 (1985).

[39] *Id.* at 16, quoting *Awedian v Theodore Efron Mfg Co*, 66 Mich App 353, 358; 239 NW2d 611 (1976); see also *Quarters v Michigan Physicians Mut Liability Co*, 154 Mich App 593, 597; 399 NW2d 46 (1986).

However, the judgment is not a money judgment as required by the statute, but rather, as the trial court construed it, "declaratory relief." Because Auto-Owners had already tendered its policy limits to the Caseys, the trial court's order resulted in a mere declaration that the Caseys were entitled to the policy amounts already offered by Auto-Owners. Without a money judgment, the Caseys are not entitled to interest. Accordingly, we conclude that the trial court properly denied the Caseys prejudgment interest.

## VI. SANCTIONS

The Caseys allege numerous violations of the Michigan Court Rules and the Michigan Rules of Professional Conduct related to improper answers and other documents filed with the trial court, discovery abuses, and perjury. The trial court ruled:

> The Court does not find that either party has filed vexatious pleadings or pleadings which were not grounded in fact, law or a good faith argument for a change in the existing law. Although this litigation has been contentious, it has been neither vexatious nor frivolous. Accordingly, both parties' motions for attorney fees and sanctions are denied.

We review for an abuse of discretion a trial court's decision whether to impose sanctions.[40] "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes."[41] After reviewing the extensive record in this case, we cannot conclude that the trial court abused its discretion in deciding not to impose sanctions.

Affirmed.

---

[40] *Bass v Combs*, 238 Mich App 16, 26; 604 NW2d 727 (1999).
[41] *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).