# STATE OF MICHIGAN

# COURT OF APPEALS

DENNIS TAUTKUS and
PATTI TAUTKUS,

        Plaintiff-Appellants,

UNPUBLISHED
November 19, 2015

v

STUART M. SAUNDERS and
McCROSKEY LAW FIRM,

        Defendant-Appellees.

No. 323209
Calhoun Circuit Court
LC No. 13-002407-NM

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs[1] appeal by right the trial court's order granting summary disposition to defendants and dismissing plaintiffs' legal malpractice action. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This action arose out of the settlement of plaintiff Dennis Tautkus's workers' compensation case. Tautkus had been employed by the City of Albion until he received a duty disability retirement in 1996. Tautkus received his municipal pension from the Municipal Employee's Retirement System (MERS) until April 1997, when it became offset (in its entirety) by income he received from the federal Social Security Disability benefit program and workers' compensation benefits paid by Michigan's Second Injury Fund.[2]

In 2010, when Tautkus was 56 years old, defendant Stuart Saunders (then an attorney with defendant McCroskey Law Firm) began representing Tautkus in negotiating the redemption of his workers' compensation benefits. During the course of the negotiations, Tautkus received an offer from the Second Injury Fund to redeem his workers' compensation benefits for $95,000.

---

[1] Plaintiffs' claims are premised on the services provided by defendants to Dennis Tautkus. Thus, references to "Tautkus" refer to Dennis Tautkus.

[2] Michigan's Second Injury Fund is a statutorily created fund that pays workers' compensation benefits, or portions of those benefits, to claimants in certain situations. See MCL 418.521.

Saunders communicated with a MERS employee, Cindy Reed, in September 2011 regarding the effect of accepting this offer on Tautkus's pension, and was told by that Reed that if plaintiff were to redeem his workers' compensation benefits, his pension amount would be approximately three hundred pretax dollars per month, and would increase to $1,645.71 on his 60th birthday.

Tautkus redeemed his workers' compensation benefits on January 12, 2011. Following this redemption, plaintiff was informed via letter from Reed that his pension benefit would be $417.99 per month, and that it would continue at this amount for the remainder of his life rather than increasing to $1,645.71 when Tautkus turned 60. McCroskey received the attorney fees from Saunders's work on Tautkus's workers' compensation case on February 4, 2011. Billing records presented to the trial court by McCroskey indicate that this was the last fee charged to plaintiffs.

Tautkus stated in an affidavit that he immediately contacted McCroskey when he learned that his pension benefit would be substantially less than he had been told, and that someone at McCroskey[3] told him that he "did <u>not</u> need any legal counsel" and should just "go tell MERS what had happened and that all would then be well."

Tautkus contacted Steve Olger at MERS on October 4, 2012; the telephone call was recorded, transcribed, and presented to the trial court. Olger confirmed with Tautkus that he would receive $417.99 per month with no increase when he turned 60. During the call, defendant made the following statements:

Well they told me it was supposed to jump up to about $1600 [when Tautkus turned 60]. Somebody lied to me when I settled all these [sic] paperwork.

* * *

If my lawyer give [sic] me false information you know, or whoever did, I don't, I don't even know how to get ahold of that lawyer anymore.

After speaking to Olger, Tautkus again contacted McCroskey on October 5, 2012 and spoke with a legal assistant, Kyla Miller, about the situation. Miller then contacted MERS to inquire about Tautkus's concerns regarding his pension amount. An October 5, 2012 facsimile letter from McCroskey to Olger, signed by Miller, indicates that Miller was seeking a letter from Olger regarding Reed's statement to Tautkus about the amount of his pension benefits, so that she could "include [it] in our file and forward to Mr. Tautkus' concerning this issue and its resolution." On October 24, 2012, Miller sent another facsimile letter requesting the same information. On October 31, 2012, A MERS employee sent a letter to Miller stating that the pension amount originally stated by Reed during a telephone conversation on September 28, 2010 was "incorrectly estimated due to a computer error" and that Reed "informed Mr. Tautkus

---

[3] Although Tautkus's affidavit did not identify the person(s) at McCroskey with whom he spoke, it appears from Tautkus's deposition that he spoke with legal assistant Kyla Miller during all calls to McCroskey during this time.

of the error through his attorney, Mr. Saunders, no later than December 21, 2010." However, Saunders's affidavit, submitted at the administrative hearing, indicated that when he spoke to Reed on December 21, 2010, Reed repeated the amounts she had quoted in September 2010; this was confirmed by recordings of the telephone call submitted at the hearing.

Tautkus contacted Miller by telephone on November 6, 2012 about the letter from MERS. During that conversation, Tautkus stated:

> Now I'm stuck at drawing $417 for the rest of my life and I settled under false pretenses. Through false documents given by you guys.
>
> * * *
>
> I'm hoping somebody can compensate me for this because I'm going to have to hire an attorney because it definitely but a pinch in my rear end, you know, losing that $1,200 a month.

Tautkus obtained his original file from McCroskey on November 13, 2012; copies were not maintained by McCroskey.

Tautkus received correspondence from MERS on December 4, 2012. Kayla Hengesbach, a "Member Data & Payment Support Manager" of MERS, acknowledged the initial error in Reed's oral assertions but stated that "In light of the ample documentation that you received from MERS concerning your retirement benefits, it is unreasonable for you to rely on statements made in two brief phone calls that appear to conflict with well-established and readily accessible facts."

Tautkus filed a petition for correction of his pension amount and for an administrative hearing before the Municipal Employee's Retirement Board (the Board) on January 3, 2013. In his letter requesting a hearing, Tautkus stated that "Due to reliance upon representation [sic] of MERS and my attorney, led [sic] to detrimental effects on my pension income."

The hearing was conducted before an administrative law judge (ALJ) on February 6, 2013. During the hearing, Tautkus asserted that Saunders was his attorney, despite Saunders having left McCroskey and taken a job as Assistant Attorney General in North Carolina. Saunders's affidavit was read into the record at the hearing. Tautkus testified that he redeemed his workers' compensation benefits in reliance on the $1,645.71 figure quoted by Reed, and that he would not have redeemed his benefits otherwise, as he had been receiving $1,400 per month from the Second Injury Fund, which he would have expected to continue indefinitely. Reed testified that she had relied on the MERS computer system when she quoted the $1,645.71

-3-

figure, and that the error was not discovered until after MERS received a copy of Tautkus's redemption order and conducted an audit of his benefits.[4]

The ALJ issued a written proposal for decision (PFD) on April 26, 2013, recommending that plaintiff's petition be denied. The ALJ found that MERS had in fact given erroneous information to plaintiff; however, the ALJ found that Tautkus had not proven that a definite promise had been made, nor was it reasonable for plaintiff to rely on Reed's oral statements without written confirmation. Although not in the record before this Court, the parties agree that the Board ultimately accepted the PFD and denied Tautkus's petition. Plaintiffs did not appeal the Board's action.

Plaintiffs filed suit in the trial court against defendant for legal malpractice on August 4, 2013, alleging that the Saunders should have known to receive written confirmation of the pension amount prior to the redemption of Tautkus's workers' compensation benefits. Following extensive discovery, defendants moved for summary disposition pursuant to MCR 2.116(C)(7) (claim barred by applicable limitations period) and MCR 2.116(C)(10) (no genuine issue of material fact). Defendants argued that plaintiffs' claim was barred under either applicable limitations period for legal malpractice: two years from the date of discontinuation of service or six months after the client discovers or should have discovered the claim, whichever is later. MCL 600.5805; *Hooper v Lewis*, 191 Mich App 312, 314; 477 NW2d 114 (1991).

The trial court held a hearing on defendant's motion in July of 2014. The trial court granted defendant's motion, holding that defendants had ceased representing plaintiffs on February 4, 2011, after the redemption of the workers' compensation benefits, and that plaintiffs were or should have been aware of the claim by at least the time Tautkus filed his claim for an administrative hearing, which was more than six months prior to the filing of the lawsuit.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7). *DiPonio Const Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 46-47; 631 NW2d 59 (2001). "Further, whether plaintiff's claim is statutorily time-barred is a question of law for this Court to decide de novo." *Id*.

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence. . . . [A] movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing

---

[4] Although not explicitly stated at the hearing, it appears that by the time of the hearing MERS no longer asserted that Saunders had been informed of the error prior to the redemption of the workers' compensation benefits.

party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant.

* * *

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).]

The applicable limitations period for claims of legal malpractice is "within two years from the date the attorney discontinues serving the client or within six months after the client discovers or should have discovered the claim, whichever is later." *Hooper*, 191 Mich App at 314; MCL 600.5805. Here, plaintiffs claim that neither limitations period bars their claim. We address each in turn.

## III. DISCONTINUATION OF SERVICE

Plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition on the grounds that defendants discontinued serving plaintiffs more than two years before August 5, 2013 (the date they filed their complaint for legal malpractice). Plaintiffs argue that Tautkus's affidavit shows that Tautkus believed defendants were representing him though at least October 24, 2012, and that Saunders's supporting affidavit and offer to be available by telephone to answer questions at the administrative hearing support the conclusion that defendants represented him throughout that proceeding. We disagree.

"A lawyer discontinues serving a client when relieved of that obligation by the client or the court, or upon completion of a specific legal service that the lawyer was retained to perform." *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994). Generally, a legal malpractice claim accrues on the attorney's "last day of professional service in the matter out of which the claim for malpractice arose." *Kloian v Schwartz*, 272 Mich App 232, 238; 725 NW2d 671 (2006). When an attorney fails to send a discontinuation letter after the resolution of the matter for which he was retained, the *Kloian* Court suggested that the result is that the legal malpractice claim accrues on the expiration of the appeal period for the matter. *Id*. at 8 n 2.

Some of a lawyer's duties to a client survive the termination of the attorney-client relationship . . . . Sound public policy would likewise encourage a conscientious lawyer to stand ever prepared to advise a former client of changes in the law bearing on the matter of representation, to make a former client's file available if the former client had need of it, and indeed, to investigate and attempt to remedy any mistake in the earlier representation that came to the lawyer's attention. To hold that such follow-up activities attendant to otherwise completed matters of representation necessarily extends the period of service to the client would give

providers of legal services a powerful disincentive to cooperate with a former client who needs such attention. [*Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999).]

Thus, this Court in *Bauer* concluded that unbilled follow-up efforts on the part of the defendant law firm regarding a workers' compensation redemption claim were responses to a complaint about "an earlier, terminated representation" rather than legal service in a continuing or renewed attorney-client relationship, and that the plaintiff's claim for legal malpractice was therefore time-barred. *Id*. at 540. Although the plaintiff in *Bauer* retained new legal representation, effectively terminating the attorney-client relationship between him and the defendant, *Bauer* still compels the same conclusion in the instant case. *Id*. at 539.

It is undisputed that defendants did not bill plaintiff for any legal services after the redemption was completed, and received their last payment from plaintiffs on February 4, 2011. Instead, what the record indicates is that Saunders, who had moved out of state, gave Tautkus an affidavit concerning his conduct prior to redemption to assist him in resolving his issues with MERS,[5] and that a legal assistant also assisted him in obtaining records of activities that had occurred prior to the redemption, and in obtaining his original file. These are precisely the sort of remedial activities a competent lawyer and law firm should "stand ever prepared" to perform for their past clients. *Id*. The record is devoid of evidence that defendants prepared or filed new legal documents, appeared on behalf plaintiffs, or otherwise undertook continued or renewed representation of plaintiffs. Further, on multiple occasions, Tautkus acted and spoke in a way that was consistent with him being aware that Saunders no longer represented him. For example, he called MERS himself multiple times, referred to Saunders as his former attorney with whom he had lost touch, and even stated that he would have to hire an attorney to resolve this matter. He also referred to Saunders as his former attorney at the administrative hearing. Although Tautkus's affidavit indicates otherwise, a party may not create a factual dispute by submitting an affidavit that contradicts his own sworn testimony or prior conduct. *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006); *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). Thus, from the record before us, it appears that both parties were aware that the attorney-client relationship had ceased following the redemption of Tautkus's workers' compensation benefits. Even granting plaintiffs the benefit of the time period for filing an application for leave to appeal the redemption order, see *Kloian*, 272 Mich App at 238; MCL 418.837, plaintiffs' claim for legal malpractice falls well outside the two-year limitations period.

## IV. DISCOVERY

Plaintiffs also argue that the trial court erred in determining that plaintiffs were or should have been aware of the existence of a claim for malpractice at least by the time Tautkus filed his administrative petition. Instead, plaintiffs argue that they were not and should not have been aware of the existence of a claim for malpractice until the ALJ issued her PFD concluding that

---

[5] In fact, in his affidavit, Saunders refers to MERS's error as occurring "Sometime after my involvement with the case."

no definite promise had been made by MERS and that it was unreasonable for plaintiffs to rely on Reed's oral statements absent written confirmation. We disagree.

"The standard under the discovery rule is not that the plaintiff knows of a 'likely' cause of action. Instead, a plaintiff need only discover he has a 'possible' cause of action." *Gebhardt v O'Rourke*, 444 Mich 535, 544; 510 NW2d 900 (1994). Thus, the six-month period begins to run when a client is able to allege the elements of a possible malpractice claim. *Id.* These elements are "(1) the existence of an attorney-client relationship, (2) the acts constituting the negligence, (3) that the negligence was the proximate cause of the injury, and (4) the fact and extent of the injury alleged." With regard to the fact of the injury alleged, the fact that a final decision by a court or tribunal (that may affect the injury suffered) has not been rendered is not dispositive; rather, the injury is established "by the occurrence of identifiable and appreciable loss." A plaintiff need not be able to *prove* each element of a possible malpractice claim in order to trigger this rule; "[o]nce a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim." *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 223, 224; 561 NW2d 843 (1997).

Here, plaintiffs became aware of an injury almost immediately following the redemption of Tautkus's workers' compensation benefits, when MERS informed them of the corrected benefit amount. On October 4, 2012, Tautkus made reference to the possibility of the injury being caused by "false information" given to him by Saunders. Further, by November 6, 2012, Tautkus was aware that MERS had issued a letter indicating that there had been a computer error and claiming (apparently, erroneously) that they had communicated this error to Saunders before the redemption. At that point, plaintiffs arguably could have alleged a possible claim of legal malpractice, albeit one based on inaccurate information from MERS. In any event, when requesting an administrative hearing on January 3, 2013, Tautkus made clear his belief that his reliance, not only on MERS, but on the statements of Saunders, had led to a reduction of his pension benefits. Thus, at that point in time Tautkus knew or should have known (to the level of "possible" if not "likely") that (1) Saunders was his attorney for his workers' compensation case, (2) Saunders had misrepresented how his pension benefits would be affected by redemption, (3) this misrepresentation caused Tautkus to redeem his workman's compensation benefits, and (4) such redemption harmed his pension benefits. The discovery rule was thus triggered on January 3, 2013, if not earlier.

Further, the fact that the error could have been that of MERS (and thus correctable at the hearing) and not of Saunders, would not toll the commencement of this limitations period. In *Solowy*, our Supreme Court held that the plaintiff was aware of a possible cause of action when she was informed of two possible diagnoses for a lesion on her ear, one of which could have been caused by medical malpractice and one of which could not have been. The Court concluded that after the plaintiff was so informed, she "was armed with the requisite knowledge to diligently pursue her claim." *Id.* at 225.

Here, Tautkus's statements indicate that he was aware, even prior to the filing of his claim for an administrative hearing, that the reduction in his pension benefits was caused by an error on the part of either MERS or his attorney. He was thus equipped with the requisite knowledge to diligently pursue his claim of legal malpractice. *Id.* That actionable error on the part of MERS was not ruled out until the ALJ issued her PFD (or the Board subsequently denied

his petition) did not delay the commencement of the six-month limitations period. The trial court did not err in concluding that the six-month discovery period had elapsed prior to the filing of plaintiffs' legal malpractice claim.

Affirmed.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra