*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMBER M. PATTEE, Guardian for SDW, a protected person,

UNPUBLISHED
April 10, 2025
9:44 AM

Plaintiff-Appellant,

v

No. 368787
Wayne Circuit Court
LC No. 21-013774-NF

FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN,

Defendant-Appellee.

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER*, JJ.

PER CURIAM.

In this coverage dispute for personal protection insurance ("PIP") benefits under the no-fault act, MCL 500.3101 *et seq*., plaintiff, as guardian of a protected person, appeals as of right the trial court's order granting summary disposition in favor of defendant and dismissing plaintiff's complaint. We affirm.

## I. BACKGROUND

SDW was a Florida resident involved in a motor vehicle accident on September 28, 2019, in Michigan (sometimes referred to as "the date of loss"). SDW's cousin, Kaylee Satterla, was driving a Dodge Ram 2500 pick-up truck and SDW was a passenger in the bed of the truck. Kaylee lost control of the truck, causing it to roll over. SDW was ejected and sustained severe physical injuries, including a traumatic brain injury. On the date of loss, the truck was owned and insured by SDW's aunt and uncle, Samantha and Arnett Satterla ("the named insureds"). The policy period was from June 8, 2019, until December 8, 2019, and provided unlimited PIP coverage for the truck. Beginning in September 2019, defendant paid over $1,000,000 to various medical providers for SDW's medical treatment and services. However, on February 3, 2021, defendant ceased paying PIP benefits for SDW's medical treatment.

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Plaintiff filed suit to recover PIP benefits so that defendant would continue to pay for SDW's medical expenses. Defendant eventually moved for summary disposition under MCR 2.116(C)(10), arguing plaintiff did not have a valid claim for PIP benefits under the no-fault act or the insurance policy. In response, plaintiff argued that SDW was insured under the insurance policy and the policy was subject to the provisions of the no-fault act before it was reformed on June 11, 2019. Relying on *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023), the trial court granted defendant's motion, concluding that SDW did not have any statutory or contractual rights under the insurance policy. Plaintiff moved for reconsideration, which the trial court denied. Plaintiff now appeals.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

"Insofar as [a] motion for summary disposition involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Duato v Mellon*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362823); slip op at 3 (quotation marks and citation omitted). "Questions pertaining to insurance coverage may also present questions of statutory interpretation subject to de novo review." *Demske v Fick*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 362739); slip op at 5.

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 8; 972 NW2d 860 (2021) (quotation marks and citations omitted).]

"[This Court] review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A "[d]e-novo review means [this Court] review[s] the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425-426; 986 NW2d 419 (2022) (quotation marks and citation omitted). Defendant moved for summary disposition under MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160.

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

B. AVAILABLE COVERAGE UNDER THE INSURANCE POLICY AND NO-FAULT ACT

Plaintiff contends that the trial court erred by dismissing the complaint because defendant and the named insureds agreed to an automobile insurance policy that provided broader PIP benefit coverage than required by statute, and SDW was an insured under the policy.

"The no-fault act permits an insurer to avoid coverage of PIP benefits under certain enumerated circumstances, such as those listed in MCL 500.3113." *Ahmed*, 337 Mich App at 9 (quotation marks and citation omitted). Under MCL 500.3113(c), "[a] person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident . . . [t]he person was not a resident of this state, unless the person owned a motor vehicle that was registered and insured in this state." Before June 11, 2019, former MCL 500.3113 did not categorically exclude nonresidents from receiving PIP benefits unless they owned a vehicle that was registered and insured in Michigan. Instead, former MCL 500.3113(c) only excluded a person from receiving PIP benefits if "[t]he person was not a resident of this state, was an occupant of a motor vehicle or motorcycle not registered in this state, and the motor vehicle or motorcycle was not insured by an insurer that has filed a certification in compliance with section 3163." MCL 500.3114(1) states, in pertinent part:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. [MCL 500.3114(1).]

"PIP benefits mandated by the no-fault act are both statutory and contractual in nature in cases in which the injured person is provided PIP benefits as a covered individual under the terms of a no-fault insurance policy." *Andary*, 512 Mich at 238. "[T]he scope of available PIP benefits under an insurance policy vests at the time of injury." *Id*. "It has long been the rule in Michigan that for insurance purposes [t]he rights and obligations of the parties vest[] at the time of the accident." *Id*. (quotation marks and citations omitted; alterations in original). "For purposes of a no-fault policy of insurance . . . neither the insured nor the insurer can unilaterally change the terms of a policy after a covered accident occurs." *Id*. at 239. Further, "[i]t is also well settled that, as a matter of general contract law, the law in place at the time a contract is entered into is tied to the contract terms[.]" *Id*. at 240. "[T]he formation and execution of a contract occurs against the backdrop of the relevant common, statutory, and regulatory law that exists at the time." *Id*.

> [A] no-fault insurance policy may provide broader coverage than that mandated by the no-fault act, even with respect to a mandated coverage such as PIP benefits. That is, while a no-fault insurer *must* provide at the least the minimum coverage required by the statute (i.e., for relatives *domiciled* in a named insured's household), it *may* provide coverage for a broader group of persons (e.g., for relatives *residing* in a named insured's household). [*Mapp v Progressive Ins Co*, 346 Mich App 575, 594; 13 NW3d 643 (2023).]

To that end, "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of

-3-

law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). "[T]he law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76; 998 NW2d 743 (2022) (quotation marks and citation omitted).

Plaintiff contends (1) the insurance policy's definition of insured included SDW because she was "any person" occupying a "covered auto;" (2) the policy included broader coverage than required under the no-fault act; and (3) when the policy was issued, nonresidents were entitled to PIP benefits under the no-fault act. These arguments lack merit.

With respect to plaintiff's argument that SDW was covered by the insurance policy, it is important that the accident occurred on September 28, 2019, which was more than three months after the amendments took effect, and that SDW was a nonresident at all relevant times. Part II of the insurance policy, which addressed no-fault coverage, stated in relevant part:

> *Policy language under this part is automatically amended to conform with and provide coverage to the extent required under Chapter 31 of the Michigan Insurance Code of 1956. This includes any changes broadening or narrowing coverage, from the date required under the law, and as of the date required.*

### A. Definitions

As used in this part:

\* \* \*

3. **Code** means Chapter 31 of the Michigan Insurance Code of 1956.

\* \* \*

5. Insured means:

a. you or any **family member**;

b. any person who is:

(1) occupying **your covered auto**; or

(2) not occupying any **auto** if the accident involves **your covered auto**;

but, only if entitled under the **Code** to recover personal protection insurance (Personal Injury Protection) benefits under this policy.

\* \* \*

### B. Personal Injury Protection

1. Insuring Agreement

> We agree to pay, to the extent required by the **Code**, the following benefits to or for an **insured** who sustains accidental **bodily injury**. The **bodily injury** must result from the ownership, operation, maintenance, or use of an **auto** as an **auto** in an **auto accident**:
>
> a. Medical
>
>> Reasonable and necessary expenses incurred for an **insured's**:
>>
>> (1) care;
>>
>> (2) recovery; or
>>
>> (3) rehabilitation. . . .

The insurance policy defined a family member as "a person related to [the named insureds] by blood, marriage, or adoption who is a resident of [the named insured's] household."

Importantly, as the above language makes clear, the insurance policy stated an insured who was injured may receive PIP benefits "to the extent required by the Code," i.e., the no-fault act. Of equal importance, the parties agreed that the policy terms were "automatically amended to conform with and provide coverage to the extent required" by the act, including "any changes broadening or narrowing coverage, from the date required under the law, and as of the date required."

As a result of this language, on June 11, 2019, the insurance policy was automatically amended to conform with the enactment of 2019 PA 21 and 2019 PA 22. Under the amended version of MCL 500.3113(c), a nonresident was unable to receive PIP benefits under the policy unless that person "owned a motor vehicle that was registered and insured in this state." SDW's available PIP benefits under the insurance policy, if any, would have vested on September 28, 2019, the date of loss. See *Andary*, 512 Mich at 238 (holding that "the scope of available PIP benefits under an insurance policy vests at the time of injury" and recognizing that "[i]t has long been the rule in Michigan that for insurance purposes [t]he rights and obligations of the parties vest[] at the time of the accident") (quotation marks and citations omitted; alterations in original). At that point in time, under the insurance policy, which was subject to the amended no-fault act, SDW was not an insured. SDW was not a family member of the named insureds because, although she was related to them by blood, she was not a member of their household. And, although SDW was occupying a covered vehicle, she was not "entitled under the Code to recover" PIP benefits as a nonresident under the amended version of MCL 500.3113(c). Further, under MCL 500.3114(1), SDW was not (1) named in the policy, (2) a spouse, nor (3) a "relative of either domiciled in the same household[.]" Therefore, plaintiff was not covered by the policy at the time of her injury.

Plaintiff cites *Mapp*, 346 Mich App at 594, for the undisputed proposition that an insurance policy may provide broader PIP benefits coverage than required by the no-fault act. In *Mapp*, this Court indicated that Progressive Insurance Company "could have limited its coverage to the minimum required by the statute" but instead chose "to employ language in its policy that provides broader coverage, namely to any relative residing in the same household as a named insured." *Id*. at 598. But unlike the provisions in *Mapp*, the instant policy provision defining an insured indicated that an insured was any person occupying a "covered auto" but "only if entitled under the Code to recover [PIP] benefits under this policy." SDW was not included in the group of persons qualifying as an insured under the insurance policy, and the parties agreed that any amendments would be a part of the policy.

Plaintiff broadly asserts that because the insurance policy was issued three days before the no-fault act was amended, it was subject to the prereform provisions of the no-fault act. This argument is meritless because, as explained, the parties agreed that the insurance policy would be automatically amended to conform with any subsequent amendments, including those on June 11, 2019. See *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 530; 502 NW2d 310 (1993) ("Where insurance policy coverage is directed by the no-fault act and the language in the policy is intended to be consistent with that act, the language should be interpreted in a consistent fashion, which can only be accomplished by interpreting the statute, rather than individual policies."). Thus, by the time of SDW's injury, she was not covered by the policy. Parties to an agreement are "presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Bakeman*, 344 Mich App at 76 (quotation marks and citation omitted).

## C. INTENDED BENEFICIARY

Plaintiff also argues that the trial court erred by dismissing the complaint because SDW was a third-party beneficiary under the insurance policy, which was issued before the no-fault act was amended.

MCL 600.1405 states, in relevant part:

> Any person for whose benefit a promise is made by way of contract . . . has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
>
> (2) (a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary.

(b) If such person is not in being or ascertainable at the time the promise becomes legally binding on the promisor then his rights shall become vested the moment he comes into being or becomes ascertainable if the promise has not been discharged by agreement between the promisor and the promisee in the meantime.

Further, in *Andary*, the Court explained:

The United States Supreme Court long ago held that the laws in place at the time a contract is executed form a part of the contract. See *Von Hoffman v City of Quincy*, 71 US (4 Wall) 535, 550; 18 L Ed 403 (1866) (stating that it is settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms and that this principle embraces alike those which affect its validity, construction, discharge, and enforcement). Michigan has also adopted a similar contract law principle in MCL 600.1405(2)(a) and (b), which provide that the rights of an intended beneficiary of a contract vest[] . . . the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary, or if the beneficiary is not in being or ascertainable at the time the promise becomes legally binding on the promisor then his rights shall become vested the moment he comes into being or becomes ascertainable so long as the promise was not previously voided. [*Andary*, 512 Mich at 241 (quotation marks omitted; alterations in original).]

"Only intended beneficiaries, not incidental beneficiaries, may enforce a contract under [MCL 600.1405]." *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 429; 670 NW2d 651 (2003).

Contrary to plaintiff's argument, SDW did not have preexisting contractual or statutory rights to receive unlimited PIP benefits under the insurance policy. SDW could not become a third-party beneficiary under the insurance policy until she was injured while occupying one of the named insureds' covered vehicles. Prior to her injuries, a nonresident like plaintiff became unable to receive PIP benefits under the language of the policy and the no-fault act because, although she was occupying a "covered auto," she was not "entitled under the Code to recover" PIP benefits. SDW was also not a family member of the named insureds because, although she was their niece and related to them by blood, she was not a member of their household. In other words, on the date of loss, or "the moment the promise becomes legally binding on the promisor," SDW did not have a vested right as an intended beneficiary. *Andary*, 512 Mich at 241 (quotation marks omitted).

Plaintiff cites to *Schmalfeldt*, 469 Mich at 429, to contend that SDW was included in the class of individuals defendant agreed to pay PIP benefits to in the event of an accidental bodily injury and the class was not "too broad." Even assuming the class of individuals under the insurance policy was not too broad, it did not recognize SDW as an intended third-party beneficiary of PIP benefits. See *id*. Further, unlike the injured party in *Andary*, who was an intended third-party beneficiary as "a named operator and a covered person under the USAA no-fault policy purchased by her husband," SDW was not an insured under the insurance policy or the no-fault act, nor an intended third-party beneficiary. *Andary*, 512 Mich at 242-243. Because SDW was

not an intended beneficiary under the insurance policy, plaintiff may not enforce the contract under MCL 600.1405.  See *Schmalfeldt*, 469 Mich at 429.

## D.  NOTICE TO THE NAMED INSUREDS

Plaintiff next argues the trial court erred by dismissing the complaint because PIP benefit coverage could not be reduced unless defendant notified the named insureds of the change.

"Where a renewal policy is issued without calling the insured's attention to a reduction in coverage, the insurer is bound to the greater coverage in the earlier policy."  *Koski v Allstate Ins Co*, 213 Mich App 166, 170-171; 539 NW2d 561 (1995), rev'd on other grounds 456 Mich 439 (1998).  In *Casey v Auto Owners Ins Co*, 273 Mich App 388, 394-395; 729 NW2d 277 (2006), this Court addressed the notice requirement and explained:

> It is well established that an insured is obligated to read his or her insurance policy and raise any questions about the coverage within a reasonable time after the policy is issued.  Consistent with this obligation, if the insured has not read the policy, he or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy.  However, there is an exception to this rule when the insurer renews the policy but fails to notify the insured of a reduction in coverage.  When the insurer fails to provide notice, the insurer is bound to the greater coverage in the earlier policy, and the insurer is estopped from denying coverage on the basis of the discrepancy between the current policy and the prior one that was not brought to the insured's attention.  [*Id*. (citations omitted).]

Part V of the insurance policy, concerning general provisions, stated in pertinent part:

> **B. Changes**
>
> 1. This policy contains all of the agreements between you and us.  Its terms may not be changed or waived except by endorsement issued by us.
>
> 2. If there is a change to the information used to develop your policy premium, we may adjust your premium.
>
> If a change resulting from Paragraphs 8.1. or B.2., above, requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.
>
> 3. We may revise this policy form to provide more coverage without additional premium charge.  If we do this, your policy will automatically provide the additional coverage as of the date the revision is effective.  This Paragraph B.3. does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through the introduction of:
>
> > a. a subsequent edition of your policy; or

b. an amendatory endorsement.

The contractual notice requirement raised by plaintiff only applies when "the insurer renews the policy but fails to notify the insured of a reduction in coverage." *Casey*, 273 Mich App at 395. Here, however, defendant was not attempting to renew the insurance policy. Instead, the Legislature amended the no-fault act and, as a result, the amendments were automatically incorporated into the insurance policy. As noted, Part II of the insurance policy stated:

> Policy language under this part is automatically amended to conform with and provide coverage to the extent required under Chapter 31 of the Michigan Insurance Code of 1956. This includes any changes broadening or narrowing coverage, from the date required under the law, and as of the date required.

This provision was part of the insurance policy and the named insureds were "charged with knowledge of the terms and conditions of the insurance policy" regardless of whether they read the policy. *Casey*, 273 Mich App at 395; see also *Bakeman*, 344 Mich App at 76. Plaintiff broadly contends that defendant violated the insurance policy by not notifying the named insureds of a reduction in coverage, but has not identified which section of the policy mandated this requirement.

### E. DIFS FILING REQUIREMENTS

The trial court also erred, according to plaintiff, by dismissing its complaint because defendant was required to file policy forms with the Department of Insurance and Financial Services (DIFS) for approval before altering the available PIP benefits.

Under MCL 500.2106(2), an insurer, subject to MCL 500.2108(6), "shall file rates with the department for approval in compliance with this act." MCL 500.2108(6) states:

> For automobile insurance, an insurer shall file a manual or plan in accordance with chapter 24, except that the manual or plan must remain on file for a waiting period of 90 days before it becomes effective, which period may not be extended by the director, and the waiting period applies regardless of whether supporting information is required by the director under [MCL 500.2406(1)]. Upon written application by the insurer, the director may authorize a filing that he or she has reviewed to become effective before expiration of the waiting period. [MCL 500.2108(6).]

And MCL 500.2108(7) states that "[a]n insurer shall not make, issue, or renew a contract or policy except in accordance with filings that are in effect for the insurer under this chapter."

After the amendments took effect on June 11, 2019, DIFS entered Order No. 19-048-M on September 20, 2019, stating that "[r]egardless of their effective date, amended provisions that affect the scope of coverage required to be provided under automobile policies may not be implemented until automobile insurers have submitted forms and rates for the Director's review and approval." The amended provisions included MCL 500.3113. On July 20, 2021, DIFS rescinded the order. As stated, however, the Legislature amended the no-fault act and those amendments were automatically incorporated into the insurance policy, as asserted by the parties.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer