**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BUHL BUILDING, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH LAND TITLE | ) | |
| INSURANCE COMPANY, and | ) | C.A. No.: N17C-03-093 EMD CCLD |
| FIDELITY NATIONAL FINANCIAL, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: May 28, 2019
Decided: August 19, 2019

*Upon Defendants' Motion to Establish Michigan as the Choice-of-Law
and Partial Motion to Dismiss*
***GRANTED***

Kenneth J. Nachbar, Esquire, Alexandra M. Cumings, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Bruce S. Sperling, Esquire, Robert D. Cheifetz, Sperling & Slater, P.C., Chicago, Illinois, *Attorneys for Plaintiff Buhl Building, L.L.C..*

Scott T. Earle, Esquire, Zarwin Baum DeVito Kaplan Schaer Toddy, P.C., Wilmington, Delaware, *Attorneys for Defendants Commonwealth Land Title Insurance Company and Fidelity National Financial, Inc.*

**DAVIS, J.**

## I. INTRODUCTION

This insurance coverage dispute is assigned to the Complex Commercial Litigation Division of the Court. Plaintiff Buhl Building, LLC ("Buhl") brings this action against Defendants Commonwealth Land Title Insurance Company ("Commonwealth") and Fidelity National Financial, Inc. ("FNF") (collectively, the "Defendants"). Buhl purchased a title insurance policy (the "Contract") from Commonwealth. FNF is Commonwealth's parent

corporation. The Court has reviewed the Contract and notes that FNF is not a signatory to that agreement.

Buhl initiated this civil action by filing a complaint (the "Complaint"). In the Complaint, Buhl alleges that Commonwealth and FNF, working together, failed to provide clean title to a potential buyer of the Buhl's building and failed to indemnify Buhl. As a result, Buhl contends that Commonwealth and FNF (i) breached the Contract,[1] and (ii) acted in bad faith.

The Defendants filed their Motion to Establish Michigan as the Choice-of-Law and Partial Motion to Dismiss (the "Motion"). Through the Motion, the Defendants request that the Court should: (i) apply Michigan law to all counts of the Complaint, (ii) dismiss FNF from the case, and (iii) dismiss Buhl's claims for bad faith and punitive damages against Commonwealth. Buhl opposes the Motion. The Court held a hearing on the Motion on May 28, 2019.

For the reasons set forth below, the Court will **GRANT** the Motion.

## I.     BACKGROUND

### A. FACTUAL BACKGROUND[2]

Buhl is a Delaware limited liability company.[3] Commonwealth was a Pennsylvania corporation at the time the Contract was negotiated, and now is incorporated in Nebraska.[4] Commonwealth's principal place of business is Jacksonville, Florida.[5] FNF is a Delaware

---

[1] The Complaint asserts three causes of action—breach of contract for damages, declaratory relief that a breach of contract exists, and bad faith.

[2] Unless otherwise indicated, the following are the Relevant Facts as alleged in the Complaint. For purposes of the Motion to Dismiss, the Court must view all well-pleaded facts alleged in the Complaint as true and in a light most favorable to Buhl. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at *3.

[3] Compl. ¶ 6.

[4] Compl. ¶ 7.

[5] *Id*.

corporation with its principal place of business in Jacksonville, Florida.[6] Commonwealth is an indirect subsidiary of FNF.[7]

Commonwealth issued the Contract to Buhl on March 11, 1998. The Contract provides $34,450,000 of coverage to insure:

> against loss or damage . . . sustained or incurred by the insured by reason of:
>
> 1. Title to the estate or interest described in Schedule A being bested otherwise than as stated therein;
> 2. Any defect in or lien or encumbrance on such title;
> 3. Lack of a right of access to and from the land; or
> 4. Unmarketability of such title.[8]

The estate described in Schedule A is Buhl's building, which is a skyscraper located in downtown Detroit, Michigan and an accompanying garage (the "Property").

The Contract does not contain a choice-of-law provision.

On May 12, 2016, Buhl entered into a real estate purchase agreement to sell the Property for $43 million to Weslan Properties, Inc. ("Weslan").[9] Weslan's title insurer, First American, issued a title commitment to insure the Property, but raised certain exceptions to the coverage.[10] One of the exceptions related to a discrepancy between the legal description of the Property in the records of the Wayne County Register of Deeds, which corresponds to the legal description insured under the Policy, compared to the legal description of the Property in the Wayne County tax records (the "Discrepancy"). Commonwealth and FNF tried to resolve the Discrepancy with First American, but First American would not insure the Property with the Discrepancy. Weslan subsequently refused to purchase the Property.

---

[6] Compl. ¶ 8.
[7] Compl. ¶ 7.
[8] Compl., Ex. A.
[9] Compl. ¶ 12.
[10] Compl., Ex. B., Exception 25.

In March 2017, Commonwealth and FNF offered "to insure a subsequent sale without exception for the [Discrepancy] shown on the First American title commitment."[11]

In the Complaint, Buhl contends that Commonwealth and FNF functioned as a single entity. As evidence, Buhl cites the following: (i) FNF and Commonwealth share an address, (ii) both Commonwealth and addressed the title exceptions, (iii) Commonwealth originally acknowledged receipt of Buhl's claim, then Commonwealth advised Buhl that Commonwealth had been assigned to FNF personnel for "investigation and administration" and finally FNF communicated with Buhl.[12]

## B. PROCEDURAL BACKGROUND

Buhl filed the Complaint on March 6, 2017. The Complaint has three counts. Count I is a claim for Breach of Insurance Contract – Money Damages For Lost Sale. In Count I, Buhl alleges that the Defendants breached the Contract by failing to timely address and resolve the Discrepancy. Buhl also claims that the Defendants breached the Contract because the Defendants failed to indemnify Buhl for (i) the decrease in the value of the Property after Weslan refused to purchase the Property; and (ii) Buhl's costs in finding another buyer and trying to resolve the Discrepancy. Count II is another claim regarding breach of the Contract –Breach of Insurance Contract-Declaratory Relief.

Count III is for Bad Faith. In Count III, Buhl asserts that the Defendants breached the implied covenant of good faith and fair dealing by refusing Buhl's request for indemnification without a reasonable justification. In addition, Buhl contends that the Defendants acted in bad

---

[11] Compl. ¶ 18.
[12] Compl. ¶ 23.

faith because the Defendants delayed in addressing the Discrepancy and refused to indemnify Buhl. Buhl seeks an award of punitive damages for this bad faith claim. [13]

On February 28, 2019, Defendants filed their Opening Brief in Support of the Motion to Establish Michigan as the Choice-of-Law and Partial Motion to Dismiss. Buhl filed Plaintiff's Response to Defendants' Motion to Establish Michigan as the Choice-of-Law and Partial Motion to Dismiss (the "Opposition") on March 28, 2019. In the Opposition, Buhl noted that Count II is moot because Buhl found another buyer for the Property. Finally, Defendants filed Commonwealth Land Title Insurance Company's and Fidelity National Financial, Inc.'s Reply Brief in Further Support of Their Motion to Dismiss the Bad Faith Claim (Count III), Striking the Request for Punitive Damages, and Dismissing All Claims Against Fidelity National Financial, Inc., (Counts I-III) Asserted in the Complaint Filed by Buhl Building, LLC on April 11, 2019.

## C. PARTIES' CONTENTIONS

### A. THE DEFENDANTS' CONTENTIONS

The Defendants argue that the Court should apply Michigan law to this insurance coverage dispute. The Defendants also claim that the Court dismiss FNF because FNF is not a party to the Contract. Finally, the Defendants request that the Court dismiss Count III for bad faith and Buhl's claim for punitive damages because both of these are barred by Michigan law.

### B. BUHL'S CONTENTIONS

In response, Buhl argues that Michigan law should not apply because Michigan does not have the most significant relationship to the Contract. Instead, Buhl claims that either Pennsylvania or Delaware law should apply. Moreover, Buhl contends that Buhl's claims for

---

[13] Compl. ¶¶ 36 – 39.

5

bad faith and punitive damages are not barred by Michigan law. Lastly, Buhl alleges that FNF

should not be dismissed because FNF directly participated in the breach of contract and bad faith

claims.

## D. STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as

true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of

the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only

dismisses a case where the plaintiff would not be entitled to recover under any reasonably

conceivable set of circumstances.[14]  However, the Court must "ignore conclusory allegations that

lack specific supporting factual allegations."[15]

## E. DISCUSSION

### A. MICHIGAN LAW APPLIES HERE.

Courts apply the law of the forum for procedural matters.[16]  The Court, therefore, will

apply the law of Delaware to govern procedural matters in this case.  As to substantive matters,

Delaware courts follow a two-step analysis in determining which state's law applies in a case.

First, Delaware courts determine whether there is an actual conflict between the laws of the

relevant states.  Second, if there is a conflict, courts determine which state has the most

significant relationship to the case.[17] The "most significant relationship" test codified in the

Restatement (Second) of Conflict of Laws applies to substantive matters in contract[18] and tort

---

[14] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[15] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[16] *Tumlinson v. Advanced Micro Devices, Inc*., 106 A.3d 983, 987 (Del. 2013).
[17] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015).
[18] Restatement (Second) of Conflict of Laws § 188 (1971).

6

cases.[19] Utilizing this two-part test, the Court concludes that Michigan law applies to this insurance coverage dispute.

### i. Actual Conflict in the Relevant Laws

There is no conflict among the general contract laws of Delaware,[20] Pennsylvania or Michigan.[21] The conflict arises on the issue of whether all the applicable states recognize a bad faith claim for breach of an insurance contract. Michigan does not recognize a claim for bad faith breach of an insurance contract.[22] Michigan also does not grant punitive damages unless granted by a relevant statute.[23] Both Delaware[24] and Pennsylvania[25] recognize causes of action for bad faith breaches of insurance contracts and occasionally grant punitive damages for these claims. As such, the Court recognizes that there is an actual conflict between the laws of Delaware and Pennsylvania versus Michigan with respect to Buhl's claims for bad faith and punitive damages.

### ii. Differing Choice-of-Law Analyses for Tort and Contract Law

Delaware courts apply different choice-of-law analyses for contract and tort cases. In *AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*,[26] the Court applied a choice-of-law analysis for contracts to both a claim for a breach of an insurance contract and a bad faith breach of the insurance contract. In that case, the Court reasoned that both causes of action arose from the

---

[19] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015).
[20] *See VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003) (finding that to prevail on a breach of contract claim, the plaintiff must show: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages).
[21] *Miller-Davis Co. v. Ahrens Const., Inc*., 495 Mich. 161, 178, 848 N.W.2d 95, 104 (2014) ("A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach.").
[22] *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006).
[23] *Id.*
[24] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 512 (Del. 2016) ("As the law now stands, given the special nature of the insurance relationship, punitive damages are available as a remedy for bad faith breach of the implied covenant of good faith where the plaintiff can show malice or reckless indifference by the insurer.").
[25] Title 42, Section 8371.
[26] 2007 WL 1849056, at *3 (Del. Super. June 25, 2007).

same underlying contract, so applying the same law to both claims promoted certainty in contractual relationships. The Court also relied upon cases from courts in other jurisdictions in which the courts had ruled that no rational businessperson was likely to have intended the laws of multiple jurisdictions to apply in controversies arising from a single contract. Therefore, the Court said that, in the absence of a choice-of-law provision, the Court will apply the choice-of-law analysis for contracts to intertwined causes of action stemming from a contract.

As in *AT&T Wireless Servs., Inc. v. Fed. Ins. Co*., the Court will apply the choice-of-law analysis for contracts to both Count I and Count III. The Court takes this approach because applying the same choice-of-law analysis and the same law to both claims will promote certainty and predictability for the parties and ease of application for the Court.

### iii. Restatement § 188

Restatement (Second) of Conflict of Laws §188 addresses "Law Governing in Absence of Effective Choice by the Parties."[27] Section 188 lists five principles for courts to consider in determining which state has the most significant relationship to a transaction. The principles are:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.[28]

Section 188 also explains that courts should consider the following five factors or "contacts" in conjunction with the principles:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,

---

[27] Restatement (Second) of Conflict of Laws § 188 (1971).
[28] *Id.*

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.[29]

Section 188 clarifies that courts should consider the principles "according to their relative importance with respect to the particular issue." The comments to Section 188 emphasize the importance of two contacts, the place of importance and the situs of the subject matter of the contract, in determining the proper choice of law. Specifically, regarding the place of performance, comment *e* states, "[t]he state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform.[30] Next, in reference to the subject matter of the contract, comment *e* explains:

> When the contract . . . affords protection against a localized risk . . . the location . . . of the risk is significant. . . . Indeed, when . . . the risk is the principal subject of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract.[31]

Finally, with respect to the parties' principal places of business and places of incorporation, comment *e* advises, "[a]t least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter state."[32]

The Defendants contend that Section 188 weighs in favor of applying Michigan law. First, the Defendants claim that Michigan has the greatest interest in resolving title disputes relating to property located in its jurisdiction and interpreting title insurance policies issued in

---

[29] *Id.*

[30] Restatement (Second) of Conflict of Laws § 188 (1971) cmt. *e*.

[31] *Id.*

[32] *Id.*

9

conformance with its requirements. The Defendants also note that the parties would have to avail themselves of Michigan courts applying Michigan law in order to resolve disputes in the chain-of-title. Next, the Defendants argue that applying Michigan law will promote certainty, predictability, and uniformity. This is because the Contract provides insurance for risks that are located in Michigan and the Contract was issued on Michigan forms. Finally, the Defendants allege that it is presumed that the jurisdiction where the risk is located has the most significant relationship and, therefore, Michigan laws should apply.

The Defendants then go on to address and argue that the "contacts" here demonstrate that Michigan law applies. First, the Defendants note that the parties negotiated and entered into the Contract in Michigan, Pennsylvania, and Florida primarily on the phone, mail, and fax. So, Defendants contend that the places of negotiation and contracting do not indicate that a particular jurisdiction's law should apply. Second, the Defendants note that the places of performance were in Michigan, Pennsylvania and Florida because Buhl and Commonwealth exchanged premiums and proceeds between these states. In addition, Commonwealth's performance may have required Commonwealth to refer to Wayne County land records and sue in courts in Michigan to remedy any title defects. The Defendants therefore claim that the most likely place of performance is Michigan. Third, the Defendants claim that the location of the subject matter of the Contract weighs heavily in favor of Michigan, contending that this contact is the most important in determining the choice of law in this civil action. The Defendants make this argument because the Property and the associated land records are located entirely in Michigan.

Finally, the Defendants assert that Commonwealth was a Pennsylvania corporation at the time the contract was formed. FNF is a Delaware corporation and Buhl is a Delaware LLC. Commonwealth and FNF have principal places of businesses in Florida and Buhl's principal

10

place of business is in Michigan. The Defendants allege that the fact that the parties are incorporated in and operate from different states suggests that this factor is less important in the choice-of-law analysis.

In conjunction with the Section 188 factors, the Defendants argue that the Court should apply a presumption in Restatement §193, which relates to "Contracts of Fire, Surety or Casualty Insurance." The presumption is that courts should apply the law of the site of the risk. The Defendants claim that the site of the risk is Michigan because the Contract provides insurance for the Property, which is located in Michigan.

In response, Buhl argues that the presumption in Section 193 does not apply to this case. Instead, Buhl argues that the case is connected to Delaware because Buhl and FNF were formed and incorporated in Delaware, respectively. Buhl asserts that the case is connected to Pennsylvania because Commonwealth was a Pennsylvania corporation at the time the Contract was formed and had its principal place of business in Pennsylvania. Buhl also notes that some of the negotiations for the Contract happened in Pennsylvania.

Next, Buhl claims that Delaware has a strong interest in protecting its citizens from an insurer's breach of the covenant of good faith and fair dealing. Buhl also alleges that Delaware has an interest in granting punitive damages in order to deter harm inflicted upon Delaware corporations and LLCs. To support this proposition, Buhl relies upon a products liability case—*Jackson v. Bridgestone Americas Tire Operations, LLC*.[33]

Here, applying Section 188, the Court holds that Michigan law applies. Delaware, Pennsylvania and Michigan do not appear to have conflicting laws for breach of contract claims. Still, the Court will apply the choice-of-law analysis for contracts and find that Michigan law

---

[33] 2015 WL 13697682, at *1 (Del. Super. Nov. 24, 2015).

11

applies because of the need to determine which law applies to Buhl's Count III—Bad Faith cause of action for the breach of the implied covenant of good faith and fair dealing.

The Court notes that the Contract does not have a choice-of-law provision. At the time of contracting, the Court finds that the reasonable expectations of the parties would have been that Michigan law would apply to disputes regarding the Property. This is because the Contract involves commercial property located in Michigan—the Property—and much of the parties' performance on the Contract was in Michigan. Applying Michigan law promotes certainty and predictability. Moreover, Delaware, Pennsylvania or Michigan have not articulated a particular interest in applying their laws to the resolution of a breach of an insurance contract claim for title insurance. So, the Court weighs the parties' justified expectations as the most significant principle in its choice-of-law analysis and finds that Michigan law applies.

The Court finds that because the places of contracting and negotiation were spread across several states and mostly performed using mail, phone, etc. these factors are not dispositive in its choice-of-law analysis. Second, as the Defendants noted, the places of performance were also spread between several states. But, the place of performance suggests that Michigan law applies because Buhl paid its premiums from Michigan, Commonwealth referenced land records in Michigan, and the parties formed the Contract using Michigan forms. Third, the Court finds that the subject matter of the Contract is located entirely within Michigan. This is clear because the Contract solely functions to provide title insurance for the Property which is located in Detroit, Michigan. All relevant land records are also located in Michigan.

The Court follows the guidance in the comments to Restatement §188, which state that the subject matter of the contract is a significant factor in a choice-of-law analysis. Finally, the Court notes that the comments to Section 188 state that the principal place of business is more

12

significant than the place of incorporation, unless the place of incorporation has specially applicable policies. Delaware's only contacts in this civil action are that Buhl and FNC are incorporated in Delaware. The Court notes that Buhl's principal place of business in Michigan, although not dispositive, supports applying Michigan law.[34]

## B. THE COURT WILL DISMISS FNF.

Buhl argues that FNF is properly a defendant in this case because FNF is directly liable for the breach of contract and bad faith claims. Buhl argues that "FNF disregarded Commonwealth's separate legal personality and exercised control over the specific transaction at issue – FNF took control of the claim process." In response, the Defendants argue that Buhl raises a claim to pierce the corporate veil, which is only triable in the Court of Chancery.

Here, there is no contractual relationship between Buhl and FNF. Buhl's claim that FNF is liable because FNF and Commonwealth disregarded their corporate personalities and acted as a team raises a claim for piercing the corporate veil. As the Defendants noted, Buhl may not sue FNF for breach of contract and bad faith breach of contract without piercing the corporate veil. This may only be done in the Court of Chancery.[35]

---

[34] In *Jackson v. Bridgestone Americas Tire Operations, LLC*, 2015 WL 13697682, at *1 (Del. Super. Nov. 24, 2015), the Court applied Delaware law where the injury from a defective product occurred, rather than Michigan law, from where the manufacturer operated. In that case, the Court stated, "we think Delaware's policy of disincentivizing manufacturers from engaging in willful misconduct by allowing for punitive damages in appropriate cases overrides a foreign state's policy of abolishing punitive damages as an economic incentive to attract businesses." Jackson is distinguishable because the Court applied the conflict-of-law analysis for torts rather than the conflict-of-interest analysis for contracts. The conflict of law analysis for contracts differs significantly from the analysis for torts because the contract analysis places more weight on the expectations of the parties rather than where the injury occurred. In addition, the Jackson case is not relevant here because the place of injury, rather than Delaware's interest in allowing punitive damages as the primary factor in its analysis.
[35] *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 Del. Ch. LEXIS 21, *8 (Del. Ch. 2008) (noting that "it is clear that only the Court of Chancery has the equitable power to pierce the corporate veil.").

**C.** **THE COURT WILL DISMISS COUNT III AND BUHL'S REQUEST FOR PUNITIVE DAMAGES.**

As noted above, Michigan does not recognize claims for bad faith breach of insurance contracts[36] and punitive damages.[37] So, the Court must dismiss Count III.

**F.** **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the Motion.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[36] *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006).
[37] *Id.*