*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE MASSERANT and LINDA
MASSERANT,

UNPUBLISHED
December 29, 2022

Plaintiffs-Appellants,

v

No. 359523
Court of Claims
LC No. 21-000087-MK

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, and ENERGY,

Defendant-Appellee.

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

Plaintiffs appeal as of right an order granting summary disposition in favor of defendant[1] under MCR 2.116(C)(8), in this action challenging the terms of the parties' settlement agreement which had resolved defendant's violation notice that plaintiffs illegally filled wetlands on their property without a permit. We affirm.

On March 25, 2016, defendant sent plaintiffs a violation notice and order to restore with regard to their property located adjacent to Lake Erie in Berlin Township, Monroe County. The letter stated that the property had been inspected to determine compliance with Part 303, Wetlands Protection, of the Natural Resources and Environmental Protection Act, MCL 324.30301 *et seq*. During that inspection it was determined that "waste soils, crushed stone and asphalt was deposited into wetland as fill material for the apparent purpose of constructing a road . . . ." Further, the fill was "estimated to cover approximately 2200 linear feet by average of 30 feet wide (~1.5 acres) of emergent and forested wetland." No permit had been issued for this activity, thus, it was considered to be unauthorized and in violation of Part 303. Further, no permit would have been approved for this activity. Plaintiffs were directed to "bring the property into compliance with the

---

[1] Defendant Department of Environment, Great Lakes, and Energy (EGLE) was formally known as the Department of Environmental Quality (DEQ) and, for clarity purposes, we will simply refer to "defendant."

requirements of Part 303," through specific actions that were listed and detailed in the violation notice. Plaintiffs were to bring the property into compliance within 30 days or within a mutually agreed upon schedule.

On December 5, 2016, defendant sent plaintiffs a letter referencing a couple meetings that were held between the parties. One meeting was held on September 21, 2016, at which time plaintiffs' consultant, Jeff King, presented a "settlement offer" which included allowing the road fill at issue to remain undisturbed while placing the remaining wetland on this property under a protective conservation easement. At that time, King suggested that there had been a preexisting road on a portion of the property at issue and that the more recent fill had impacted only about 0.5 acre of wetland. Defendant rejected that claim, noting that most of the fill at issue occurred between 2010 and 2016—as evidenced by review of aerial photos—and the "road fill project resulted in impacting approximately 1.43 acres of coastal wetland." Defendant concluded that "the proposal to allow the fill to remain in exchange for a conservation easement over the rest of the wetland on the property is not acceptable." Therefore, plaintiffs were directed to submit within 30 days a wetland restoration and monitoring plan which included specific actions that were listed and detailed in the letter.

On January 2, 2020, plaintiffs and defendant entered into an Administrative Consent Agreement (Agreement). The recitals of the Agreement indicated that the parties desired to resolve this dispute without additional administrative and/or judicial proceedings and identified the necessary actions the parties were to take to resolve this matter. In the "Compliance and Implementation Schedule" section of the Agreement, the "Site Restoration Requirements" were listed. The first requirement stated, in relevant part:

> By July 30, 2020, [plaintiffs] shall submit to [defendant] . . . plans to restore 1.05 acres of wetlands (Wetland Restoration Area), as shown on Exhibit A attached herein, to substantially the same wetland conditions, in accordance with Exhibit C, that had existed prior to the Alleged Unauthorized Activities (Wetland Restoration Plans).

The Wetland Restoration Plans were to include specific details and required written approval or modifications by defendant before construction activities were to be initiated. Plaintiffs' restoration activities were to be completed by April 30, 2021, and then monitored for five years to ensure re-establishment as a wetland community. In the General Provisions section of the Agreement, paragraph 17 stated that no change or modification of the Agreement was valid unless agreed to by all parties to the Agreement. Further, paragraph 18 stated that any disputes arising out of the Agreement were to be informally negotiated in a timely, diligent, and good faith manner before resort to judicial enforcement. And paragraph 19 stated that the parties entered into the Agreement for settlement purposes only and that plaintiffs did not admit liability or wrongdoing.

Thereafter, plaintiffs retained the consulting firm of Natural Resources Management, LLC (NRM) to prepare the Wetland Restoration Plans as set forth in the Agreement. In the Wetland Restoration Plans, NRM contended that only 0.70 acres of the disputed area had been wetlands before plaintiffs deposited the unauthorized fill material, and thus, the Wetland Restoration Plans that were submitted to defendant on August 25, 2020 included only restoration of 0.70 acres—not 1.05 acres as required by the Agreement entered into by the parties.

On October 8, 2020, defendant responded to plaintiffs' proposed Wetland Restoration Plans and, in relevant part, disagreed with NRM's contention that a 0.35-acre-fill-area was "historically upland," and thus, only 0.70 acres required restoration as wetland. Defendant continued to require—as set forth in the parties' Agreement—that the entire 1.05-acre Wetland Restoration Area identified in the Agreement be restored as a condition of approval of the Wetland Restoration Plans.

On October 23, 2020, NRM provided supplemental information for plaintiffs' proposed Wetland Restoration Plans which again contended that there was a discrepancy in the parties' Agreement as to the Wetland Restoration Area. In particular, NRM contended, the Wetland Restoration Area was actually 0.98 acres—not 1.05 acres—and the historically upland area that did not exhibit wetland hydrologic conditions was 0.28 acres. Therefore, it was requested that defendant revise the total area subject to the Agreement to 0.98 acres and agree that the 0.28-acre area was not historically wetland, and thus, was not subject to restoration. Subsequently, defendant denied plaintiffs' request and advised that plaintiffs were required to restore the Wetland Restoration Area as set forth in the parties' Agreement.

In April 2021, plaintiffs filed their complaint in the Court of Claims. In Count I, plaintiffs alleged mutual mistake and sought reformation. Plaintiffs averred that the parties mistakenly believed that the size of the area impacted by plaintiffs' placement of the fill material was 1.05 acres when it was actually 0.98 acres. Further, at the time the Agreement was executed, the parties mistakenly believed that the entire 0.98 acres was wetlands when, in fact, only 0.70 acres had been wetlands and 0.28 acres had not been wetlands. Because only wetlands were to be restored under the parties' Agreement, plaintiffs requested that the Agreement be reformed to require restoration only as to 0.70 acres. In Count II, plaintiffs alleged a breach of contract claim, contending that defendant's refusal to approve their restoration plan, as supplemented, violated the terms of the Agreement. And in Count III, plaintiffs sought a declaratory judgment that plaintiffs were required to conduct wetland restoration only as to 0.70 acres and not 1.05 acres.

Defendant responded to plaintiffs' complaint with a motion for summary disposition brought under MCR 2.116(C)(8) and (10). Defendant argued that plaintiffs were attempting to rewrite the settlement Agreement that they entered into voluntarily and with the assistance of counsel. That Agreement defined the Wetland Restoration Area as being 1.05 acres of protected wetlands which plaintiffs filled without the requisite permit. There was no mutual mistake and defendant did not breach the contract; rather, plaintiffs simply did not want to render performance as the parties had agreed. Although plaintiffs disputed the size of the Wetland Restoration Area now, the Agreement specifically states that plaintiffs did not admit liability or wrongdoing but agreed to enter into the Agreement for purposes of settlement only, i.e., to resolve the violation that was *alleged* by defendant, including that 1.05 acres were illegally filled. Thus, defendant's allegations regarding the violation and scope of the fill placement were not material facts relied upon by the parties; rather, the Agreement was entered into to avoid litigation which would have actually determined the validity of those factual allegations. Consequently, plaintiffs' claim of mutual mistake and seeking reformation of their Agreement must fail as a matter of law. Further, defendant did not breach the Agreement by refusing to accept plaintiffs' Wetland Restoration Plans that violated the expressed terms of the Agreement; therefore, plaintiffs' breach of contract claim must fail as a matter of law. And because there is no actual controversy, a declaratory judgment

was not warranted. Accordingly, defendant argued, plaintiffs' complaint should be dismissed in its entirety and judgment rendered in favor of defendant.

Plaintiffs responded to defendant's motion for summary disposition, arguing that their claims should not be summarily dismissed because the actual size of the area filled without a permit and the wetland conditions were determined by plaintiffs' expert, NRM, not to conform to the parties' understanding as set forth in their Agreement. That is, both parties relied on incorrect information when they entered into the Agreement, and thus, there was a mutual mistake regarding the essential terms of the contract requiring reformation of their Agreement. Further, defendant breached their Agreement by requiring plaintiffs to create wetlands instead of restore wetlands and thereby refusing to approve plaintiffs' Wetland Restoration Plans. Accordingly, plaintiffs argued, defendant's motion for summary disposition should be denied.

On September 30, 2021, the trial court issued its opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(8). The court noted that the Agreement set forth defendant's allegation that plaintiffs placed fill material within a protected wetland area that was about 1.05 acres in size. Plaintiffs expressly denied the allegation, wrongdoing, and liability in the Agreement, but nevertheless agreed to restore to wetlands 1.05 acres allegedly affected by their actions in order to resolve this matter. In light of the denials and disclaimers by plaintiffs regarding the veracity of defendant's allegations, they could not state a claim of mutual mistake. Further, "plaintiffs assumed the risk that the actual circumstances might not align with defendant's allegations," and thus, rescission was not warranted. Moreover, plaintiffs' breach of contract claim failed as a matter of law because defendant did not breach the Agreement by refusing to approve plaintiffs' Wetland Restoration Plans that did not propose to restore 1.05 acres as required by their Agreement. And plaintiffs' request for a declaratory judgment that they were obligated to restore only 0.70 acres of land because of a purported mutual mistake also failed to state a claim for relief. Accordingly, plaintiffs' complaint was dismissed. After plaintiffs' motion for reconsideration was denied, this appeal followed.

Plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition after concluding that reformation of the Agreement was not warranted because there was no mutual mistake, and that defendant did not breach the Agreement. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(8) which tests the legal sufficiency of the complaint on the pleadings alone. *Id*. at 119-120. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant" to determine whether the claims alleged are clearly unenforceable as a matter of law. *Id*.; see also *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 131-132; 839 NW2d 223 (2013). An attachment to a pleading is considered part of the pleading. MCR 2.113(C)(2) ("An attachment or reference to an attachment . . . is a part of the pleading for all purposes."). See also *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 163; 934 NW2d 665 (2019); *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003).

We also review de novo issues of contract interpretation and equitable issues, such as whether reformation is proper. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23

(2005); *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013). Reversal is only warranted if we are convinced that we would have reached a different result than the trial court. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 394; 729 NW2d 277 (2006). The goal of contract interpretation is to honor the parties' intent and to enforce the contract's plain terms. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). If no reasonable person could dispute the meaning of the contract's plain language, this Court must enforce that plain language as written. *Rory*, 473 Mich at 468.

We first consider and reject plaintiffs' claim that a mutual mistake required reformation of the parties' Agreement. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership v White Pines Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). "Courts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 24; 592 NW2d 379 (1998) (quotation marks and citations omitted). However, a unilateral mistake or a mistake in law regarding the legal effect of an agreement is generally not a basis for reformation. *Casey*, 273 Mich App at 398.

> In *Clark v Al-Amin*, 309 Mich App 387; 872 NW2d 730 (2015), this Court explained:
>
> A mutual mistake is an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction. A "mutual mistake" is not a mere error or misunderstanding—it is an *extreme* mistake that must be so material that it goes to the foundation of the agreement. [*Id*. at 396 (quotation marks, citations, ellipses, and footnote omitted).]

Thus, the issue is whether there was an erroneous belief shared and relied on by both plaintiffs and defendant about a material fact that affected the substance of the transaction.

Defendant argued, and the trial court appeared to agree, that the precise scope of the alleged unauthorized fill area that gave rise to defendant's violation notice was not a material fact that affected the substance of the transaction because plaintiffs did not admit liability or wrongdoing; rather, they merely agreed to enter into the Agreement to settle the claims made by defendant in that regard. In other words, the parties did not agree on the accurateness of defendant's factual allegations, including the scope of plaintiffs' illegal fill activity, but did agree to reach a compromise to settle the matter in the manner detailed in their Agreement. We agree. In fact, it is apparent that before the parties reached a compromised settlement, they did not agree as to the scope of plaintiffs' illegal fill activity because defendant had claimed that 1.43 acres of wetland had been impacted while plaintiffs had claimed that only 0.5 acres had been impacted. Thus, it appears that the parties reached a compromise and defined the Wetland Restoration Area as 1.05 acres. It is a longstanding tenet of contract law that "parties are free to contract as they see fit, and the courts are to enforce the agreement as written" unless highly unusual circumstances exist. *Rory*, 473 Mich at 469.

-5-

But further, defendant has never agreed that there was a contractual mistake; instead, defendant has consistently asserted—as a fact supported by evidence—that plaintiffs illegally filled at least 1.05 acres of their land and defendant still claims on appeal that plaintiffs illegally filled at least 1.05 acres of their land. In other words, defendant has repeatedly rejected plaintiffs' contentions that the area at issue was only 0.98 acres and, of that, only 0.70 acres had been wetlands. Thus, plaintiffs did not establish that there was an erroneous belief that was mutual, i.e., a mutual mistake.

Although plaintiffs' complaint referred to and relied on their consulting firm's findings with regard to the alleged dimensions of the fill area, these findings are not necessarily beyond dispute and do not conclusively establish a mutual mistake. Defendant was not required to rebut those purported findings with evidentiary proof to support its claim that the area was actually 1.05 acres because the matter was settled by the parties' Agreement which specifically defines the Wetland Restoration Area as 1.05 acres. In fact, if plaintiffs' consulting firm's findings were that plaintiffs illegally filled a *larger* area than 1.05 acres—defendant was also bound by the parties' Agreement that the disputed area was 1.05 acres. Plaintiffs' late challenge to that settlement term is unsuccessful. This matter had been in dispute for several years and the time for plaintiffs to challenge the size, dimensions, or other conditions related to the unauthorized fill area was *before* plaintiffs entered into the Agreement to resolve defendant's violation notice—the purpose of which, as set forth in the recitals of the Agreement, was to resolve this matter without additional administrative and judicial proceedings. Plaintiffs were aware of defendant's allegation that at least 1.05 acres of wetlands had been illegally filled. Extended negotiations were conducted. Plaintiffs had access to their property and all of the information pertaining to this matter before they entered into the Agreement.

And plaintiffs were not forced to enter into the Administrative Consent Agreement; they could have challenged defendant's allegation through litigation, at which time defendant's claims could have been established or refuted through proper evidence and judicial proceedings. In other words, plaintiffs and defendant could have presented expert testimony on the contested issue, following which a determination would have ultimately been made by an impartial decisionmaker. But, instead, the parties agreed to reach a compromise to resolve their dispute, without additional administrative or judicial proceedings, and enter into the Agreement. Moreover, plaintiffs did not include a condition or contingency in the Agreement with respect to a mutually-agreed-upon determination of the precise dimensions of the Wetland Restoration Area at issue; rather, plaintiffs entered into the Agreement to settle this matter. We will not interject a different term into the parties' Agreement on a claim that a "mutual mistake" occurred simply because plaintiffs now believe that the area they illegally filled did not comport with their previous understanding, as set forth in the Agreement they entered into with defendant to settle this matter. Such a unilateral mistake does not warrant reformation of the settlement Agreement. See *Wolf v Mahar*, 308 Mich App 120, 129; 862 NW2d 668 (2014) (citation omitted).

We next consider and reject plaintiffs' claim that defendant breached the Agreement. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

Plaintiffs alleged that defendant breached the Agreement by not accepting their Wetland Restoration Plans which provided for the restoration of 0.70 acres of disturbed wetland because, plaintiffs claimed, the remaining 0.35 acres were upland and not wetland. However, the Agreement defines the Wetland Restoration Area as consisting of 1.05 acres—not 0.70 acres— which was also depicted on Exhibit A attached to the parties' Agreement. When contractual language is unambiguous, courts must interpret and enforce the contract as written. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Because plaintiffs' Wetland Restoration Plans did not address the entire 1.05 acres as required by the parties' Agreement, the trial court properly concluded that defendant's refusal to accept plaintiffs' Wetland Restoration Plans did not constitute a breach of contract.

Accordingly, plaintiffs' complaint failed to state a claim upon which relief could be granted and the trial court did not err in granting defendant's motion for summary disposition under MCR 2.116(C)(8).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett